Your Honor, David Dillard for appellants, plaintiffs, Century Tile, and Carl Studley. I'd like to reserve perhaps three minutes for rebuttal. Keep track of your time, yeah. Thank you. The threshold issue in this appeal is the scope of copyright protection that should be afforded. Our plaintiffs, Glass Tile and Mosaics, there are four of them that are at issue in this appeal. They're all members of what our client calls the Sumier Collection. The mosaic here on the left is one that's called Morioka. There's photographs of it in our briefs, and we discuss quite a bit about it. The uniqueness of these mosaics with respect to Morioka is the presentation of the color and the color combinations. The colors are presented as the streaks that run across the tile from one side to the other. But the streaks, they don't have a definite size or thickness or color intensity. There's a lot of variance. It's done intentionally because the goal here from the artist's standpoint is to create a natural look. Likewise, the streaking on the various tiles, you'll see that the orientation differs, so that the actual individual tiles are arranged in what we call an apparently random arrangement. What that means is that it would be random, except that in a real random arrangement, you do get clumps of one color, the same orientation maybe in one area, and you want to avoid that, so you want to have a nice balance. Can I interrupt a second? Yes. I'm looking at the Hirsch brief at page 40, and it has the Morioka natural picture of the copyright deposit, and it has next to that a Pellens-Morioka natural used in the deposition of Alex Z. And what I'm seeing here in the courtroom looks like yet a third variant of the pattern. Am I correct, or is one of those, is that? The one that you're seeing here in the courtroom would be the one on the left. So that's the copyright? That is the copyright deposit. Actually, it was a photograph that was submitted to the copyright, but of this specific mosaic. Okay, and is it correct, then, that what's in the brief is, in fact, another iteration of the copyright deposit? That's how it comes out. It's actually, at least in the brief, it looks to be different from the copyright in some regards. The manner in which the streaking is created does not allow for exact replication. That's why there's a variance. And the second Morioka on that page was, you know, these things are produced in large quantities. Yeah, I understand that. Right, and so I just want to understand that. There would be another sheet of mosaic sold under the Morioka name. Okay, so is that a sheet that we're looking at? Yes. Okay, so it's fair to then say that if you're comparing your client's product, that even in your own process you can't replicate what we're seeing here in court exactly. It would not be an identical copy. It would be a variation. It would be. And the one that's the Exhibit 101 in the brief is an example of the variation. I don't know if it's – yes. It purports to be, you know, the part of the Morioka copyright. Well, what we believe is or what we're advocating is that the copyright extend to the overall look of the copyright, what we call in the district court the color expression. Yeah, I understand what you're claiming. I'm just trying to understand how it translates into, as I think Judge Wu did, how does it translate into the real world? And what's the implication of saying that what is copyrighted there then extends to a variety of permutations, if you will, within this particular color scheme? I understand the blues and the others are other color schemes. Well, what we are advocating is that the copyright protection would cover the overall look or the color expression irrespective of the specific streaking patterns. And you do get a different pattern even from the deposit sample if you rotate it 90 degrees. If you're looking at tile for tile, they're going to be different, but they do have the same overall look. And that's the result of the selection of the colors and the color blends, the fact that there is this streaking and the presentation by virtue of the streaking, as well as the random arrangement. And that the same kind of variation that you get simply by rotating this is what you consider the common look of that is what we would be referring to as a color expression. Now, as far as sheets that are not the actual deposit, but that are created, what you want to do as a manufacturer is to create sheets that are so closely consistent in their overall expression, the color expression, that you can butt them up together and make large spaces of these tiles. There was testimony that's quoted that if one were to take, and the reason I'm referring to the one in the brief is because it's just using your own tiles, that different production runs would not be put on the same wall. So are the two that are shown in Pelley's brief of sufficient differentiation that they would not in an installation be put on the same wall, assuming that that statement I referred to is correct? I know for a fact that they would be out of different production runs. I think you don't want to put different production runs on the same wall. Okay, so therefore, the example, so these are two different, what's in the brief are two different production runs, and even though that there's not in the technical sense, I'm not prejudging, they're at least, let's say they're substantially similar. Nonetheless, for purposes of the aesthetic and the use, and in an installation those are sufficiently different that they would not be put together on the same wall. Well, one would have to actually put them together and see how well they matched, because the colors are the same. The colors are reproducible. It looks like that one may have had a lighter overall balance, but we're also looking at photographs, which tend to… I thought the statement was that different production runs, by definition, at least in practice, would not be put together on the same wall. That's true. Even if it's the same basic Morioka color system? I think that's just the way manufacturers operate. Whether or not they could be put together on the same wall, they aren't, and you assure that any slight difference in the raw materials, for example, doesn't impact, and besides, if you're creating a wall of this at a resort or a hotel, you would get all of those at one time, and you'd just lay it out, and that would typically be of a production run. So I think that in order to be covered by the copyright, or when you're analyzing the differences between the copyrighted color expression, assuming that there's protection in the color expression, and another allegedly infringing mosaic, you'd have to go back to the copyright deposit. The copyright deposit is what provides notice, if you will. The deposits really aren't very good at providing notice, but that's what the copyright has given their stamp of approval on. You've given that to the copyright office as an example of what it is you're seeking protection on, and so I think that's why you need to keep that original. So you do agree with the district court finding that to the extent there's a copyright, it's a copyright on this one that's in the courtroom, and then the question is whether as compared to that copyright deposit example, not the variant that's the alternative exhibit 101, you'd have to go back to the one that's in the copyright office and decide whether the alleged infringing tile is either virtually identical or substantially similar to that one that's in court here. I think there's a little bit different aspect of that that we're advocating. We do agree that you would need to go back to determine the color expression. What we're advocating is that the color expression should be independently protected apart from the specific streaking pattern, which is what the court said it was limited to the streaking pattern and the orientation of the tiles and all that. So if there was others that had the identical or that didn't deviate from this color expression in any essential aspect, then I think that would be covered by the copyright. Now, you may have a question about, for example, the one sheet that was identified in Hersh's brief as to whether or not that is, whether the differences are not essential such that that's covered by the copyright, but I think you need to go back and make that determination. You know, before your time runs entirely, you've got some others up there, and I assume some of them are yours and some of them are theirs. Could you indicate to me which ones are which? Yes, Your Honor. This is Mr. Steadley's Kimber Metro, and this is his O'Hara Metro. This is a Morioka. I'm sorry. The ones, too, you just, those are. Okay, so. Which is the copyright and which is the infringer, alleged infringer? Copyright, alleged infringement. Copyright, alleged infringement. Okay, yeah, that's what I wanted to know. Thank you. Yeah. Okay. And this is the copyright. Okay, got it. And Judge Wu finds that you've got a, quote, thin copyright, and given there's a thin copyright to state it in lay terms, they've got a very close match, and he concludes the match isn't quite close enough. Well, I think given Judge Wu's decision that the protection extends only to the specific streaking pattern, there's no question the alleged infringing ones have a different streaking pattern, just like any other of the tile sheets that were manufactured by our own client. The streaking pattern is limited to one sheet, period, and it would render the copyright essentially kind of meaningless. Okay. Can I just step back and ask a question? I was trying to, before I got to see the tiles, trying to analogize to something else, an artistic expression. The, now I just forgot the artist's name.  Jackson Pollock. Okay, so Jackson Pollock has a particular style, and just by his artistic process, they're all going to be different. You'd have to hold them up. I mean, he could use all the same colors, but they'd all come out different. What I was understanding Judge Wu to say was, yes, you have a copyright in the idea of using these color patterns and streaking, or color, you're calling color expression and streaking patterns, and each time you produce one of these, you've got a copyright on that, and somebody comes along and replicates that and makes it a virtually identical copy, you're protected, and you're saying, well, that's not good enough, that doesn't help. Here's, let me make a couple comments. First, for example, if this deposit was actually part of a larger mosaic that was installed on the wall, under Judge Wu's decision, this one square in this seamless mosaic, that all has the same look, that one square would be protected by the copyright, but nothing else, and somebody could come along and copy this color expression without any difficulty at all. Now, the other thing is there's really a difference in the protection, then, between natural-looking mosaics and things that would be geometric designs. Say, for example, instead of using this variegation-type streaks, you used, actually, a solid line for a streak to introduce the colors into the mosaics, and you had a definite pattern. Well, you could put those all together, and every single one having the identical pattern would be covered by the copyright. And if you're introducing color as a stripe, for example, you could end up with, if they're all oriented the same way, it looks like a bunch of long, skinny stripes up on the wall. Okay, now, you're over time. Unless the rest of the bench has further questions at this time, we'll hear from the other side, and we'll give you a chance to respond. Okay. May it please the Court. My name is Enoch Leong. This is Dan Taylor. Together, we represent the defendants in Epelese in this case, Hirsch Glass Company, and Paragon Industries. The fundamental issue in this appeal is not the scope of the plaintiff's copyrights. Instead, the fundamental issue in this appeal is whether Judge Wu was correct in his assessment of the plaintiff's copyrights. In other words, even if the district court erred in overly limiting the scope of the plaintiff's copyrights to the exact deposits, that doesn't matter, because Judge Wu's finding that there was no substantial similarity under the extrinsic test would still apply. What's the difference between substantial similarity and virtually identical? That's a good question, Your Honor. I don't know if there's ever been a court that's actually said what the difference is between substantial similarity or virtual identity. However, Judge Wu's decision says that the tiles are not substantially similar, much less virtually identical. So he would cover all of the bases. For example, there are four options regarding the scope of the plaintiff's copyrights in this case. We went under all the options. Option one would be to hold that the copyrights are invalid, as the Copyright Office invited with respect to the Mantra Tile Line. Option two would be to affirm Judge Wu's ruling and say that the copyrights are limited to the exact copyright deposit, and there's good policy reasons for that that we can get into, in which case even the plaintiffs concede that we would win. Option three is to hold that the copyrights are thin, but not limited to the exact copyright deposit, in which case we would still win because Judge Wu found that the defendant's tiles are not substantially similar, much less virtually identical, under the extrinsic tests at Fourth by the Ninth Circuit. And option four would be to find that the scope of the plaintiff's copyrights are not thin, in which case the defendants would still win under summary judgment because Judge Wu found that the defendant's tiles are not substantially similar. Now, I'd like to actually turn to the four sample comparisons that Judge Wu looked at at the September 3, 2009 hearing. First of all, the plaintiffs concede that you're supposed to view these things from one meter away. That's 2 A.E.R. 145, paragraph 10. So if the Court, with the Court's permission, I'd like to hand a comparison set to the clerk to hand to the Court so you can view from one meter away. Oh, I think I can see them from here. May the other members of the bench want to see them from one meter away? I have my progressive glasses on. I can't see up close, but I can sure see far away. Understood, Your Honor. Okay. I've got an iPad and I can zero in on them. The first comparison set would be Kyoto Natural, which is the plaintiff's copyright deposit, versus Bonsai Blue, which is the defendant's. Now, there are three protectable elements the plaintiffs identified. If you wouldn't mind, you put up two more. Whose is whose? Can you tell? Of course. Kyoto Natural is on the left. No, I'm asking about the two new ones you put down. Oh, you just added. Kyoto Natural is the plaintiff's copyright deposit. Golden Slumber is the accused product. Would you like me to discuss this one first? No, no, that's okay. I just wanted to know which one. As long as I was kind of listening to you, I wanted to be watching. Okay. Sure. Now, there's three protectable elements that the plaintiffs identified under the extrinsic test. Streaking, natural color blends, and idea of randomness. Correct, Your Honor. Tell me, how can you have controlled randomness? Isn't that an oxymoron? I agree, Your Honor. There is no such thing as controlled randomness. Once you try to introduce some control, it's no longer random. Now, with respect to Kyoto and Bonsai Blue, they both share the idea, and we agree that they share the idea of a blue color blend in streaks of color in clear glass in a random pattern. But the expression is completely different. For example, the plaintiff's expression of the idea of a blue color blend is a navy blue treading towards black, and that's expressed in the plaintiff's color blend. On the other hand, the defendant's expression of a color blend of blue is purely cobalt blue in clear. The expression of the idea of the color blue is different. Streaks of color in clear glass. I agree. We both have streaks of color in clear glass. The plaintiff's expression of a streak of color in clear glass is much more faint and wispy and thin streaks of color. The defendant's expression of streaks of color in clear glass is much more bold and vibrant streaks that clearly stand out. They are not muted in the background. And that's no accident. The manufacturing process of adding color to clear glass can be done in a number of different ways. The plaintiffs add color to their clear glass glaze using color pellets, and that's what results in faint, wispy streaks of color. The defendants add color to the clear glass by using molten color, and that's what results in the defendants' expression of streaks of color coming out as very bold. Random patterns. I agree that we both have random patterns. That's what permits it to look natural. But they can't monopolize a natural look. We can make a natural look as well which we have done with Kyoto Natural and Basai Furniture. Another set, Your Honor. Lahara Natural and Magnum Black. These both have a black color blend in streaks of color in clear glass in a random pattern. However, the plaintiff's color blend of black is expressed with gray-blue tiles, chocolate brown tiles, and pure black tiles. The defendant's expression of the color black is purely black and clear. We don't have chocolate brown. We don't have gray-blue. Streaks of color in clear glass. We both have that idea, but our expressions are different. Theirs are faint and muted in the background. Ours are bold, and they stand out, and those are vibrant colors as a result of different choices made during the manufacturing process. Did you say the one you're holding in your left hand, that's the faint one, and the one you're holding in your right hand, that's the bold one? In terms of the streaks of color, yes, Your Honor. Now, they have certainly darker tiles overall that are chocolate brown, gray-blue, et cetera, but our streaks of color are clearly more vibrant and stand out, and that's not an accident. That's the result of different choices and different expressions made during the manufacturing process. Chusengi Natural, plaintiff's copyright, on the left. On your right, my left. Golden Slumber. Defendants, on your left, my right. Chusengi Natural has a yellow-amber cast with some streaks of brown, but certainly no streaks of black. That's this one. Our expression of a black-and-amber color combination has black, clay, amber, with no yellow cast whatsoever. The expression of the idea between the plaintiff and the defendants is completely different, and that's what Judge Bluth found. Now, you're arguing these are not substantially similar under an extrinsic test, but why aren't these close enough to put it onto the intrinsic side so that instead of us sitting up here on the bench, what you're doing really ought to be, and the viewing and the visual reaction ought to be decided by jury. Three answers to that, Your Honor. The first is that the Ninth Circuit grants summary judgment to defendants under the extrinsic test all the time. Well, that doesn't help us in this case. We don't do it all the time. Sometimes we don't, so. Well, I was going to give the Court some examples. For example... Well, how about talking... Okay. Well, I'll keep going. All right. Under the intrinsic test, Your Honor... Now, Judge Wu made his decision under the extrinsic test. He has to. Right. There's also authority in the Ninth Circuit that says when it comes to artistic works, a court can look at the intrinsic test and look at the total look and feel as well. And those cases are C.S. v. McDonald's, Cavalier v. Random House, and the Ninth Circuit in Apple Computer. I believe two of those decisions were written by Judge Fletcher. And in those decisions, they indicate... Oh, yeah? No, there are two Judge Fletchers. See, they're substantially similar, but... Substantially identical. There's W. Fletcher, and there's B. Fletcher. B stands for better. And I won't tell you what W stands for. The Ninth Circuit in Shaw v. Lindheim held that when it comes to literary works, the intrinsic test is exclusively the province of the jury. That's been called into question in C.S. v. McDonald's, Cavalier v. Random House, and the Ninth Circuit in Apple Computer, which said, well, when it comes to graphical works like the graphical user interface in Macintosh, the court can look at the intrinsic test. And I'm only limiting my comparison, Your Honor, to the practical elements the plaintiffs themselves identified under the extrinsic test. There are more differences that we can talk about in the total look and feel under the intrinsic test, but I'm not doing that, Your Honor. I'm following the guidelines set forth in Apple Computer, which is you compare what the plaintiffs identify are the protectable elements. Does that answer your question, Judge Fischer? Yeah. Okay. I think. Okay. Now, I'd like to turn to address the scope of the copyrights, if the Court would like to hear about that. I mean, from our perspective, it's our position that the scope of the copyrights doesn't matter because Judge Wu found that under the extrinsic test, they're not substantially similar, much less virtually identical. But if the Court would like us to defend why the copyrights should be limited to the copyright deposits, we're happy to do that. It's also set forth in our briefs, Your Honor. But I'd like to conclude by referring the Court to the Sadova v. Lowry case written by the Ninth Circuit. In Sadova, the Ninth Circuit had to locate the, quote, faint line between unprotected ideas and original expression. The Court held that it had to, quote, vigorously police the line between idea and expression to ensure that proper latitude is granted other artists to make use of ideas that properly belong to us all. The same holds true in the present case, Your Honor. My client's variegated glass tiles made use of ideas that properly belong to us all, including a randomized natural look. To protect the right to make use of these ideas, the Court should affirm the district court's grant to summary judgment. Thank you, Your Honor. Thank you. You went over time, but why don't we give you two minutes to respond. Thank you, Your Honor. First off, plaintiffs' appellants do not claim that any of those three, what Mr. Heng identified as three protectable elements, are protectable on their own. No. Or even in combination apart from the actual copyrighted works. How did Judge Wu arrive at the determination that they were substantially similar, by isolating on one or looking at them in total combination? I believe he actually said, I can see differences. Yeah. And there's no question there are differences. The question is whether or not if the color expression is protectable apart from the specific streaking pattern, are they substantially similar? And part of the extrinsic test is also a consideration of access, which there clearly was in this case. Of access? Access. Access and substantial similarity. The greater the access, the less similar they might be and still be worthy of going to the next step, which is the intrinsic test before a jury. With respect to the viewing of these, while it is true that most people are probably within a meter and the testimony was a meter, it doesn't mean people focus on the details of it as opposed to the overall impact of it. The dominant feature is what we call the color expression, not the individual streaks of the individual tiles. Comment about the Satava case, or Satava, I'm not sure how it was pronounced, but that was a jellyfish inside of a glass mold, and you can't get a copyright on an existing animal or anything actually existing in nature. So the court properly held that the only copy or protectable features were the arrangement of the tentacles and so forth, and in that case the alleged infringement was another jellyfish that had a totally different arrangement, and that's a very easy case to understand why it was determined that virtual identity was required in that. Now you're over the two minutes we gave. I won't cut you off, but if you'd like to sum up. I believe that the tile mosaics, that there should be protection over the color expression, the overall look of them, apart from the specific... Well, see, I'm having trouble counting. You shift back and forth. You're talking about color expression, and you said that there's also streaking pattern. So what is it? You're saying all in combination, but what is it? Are you focused on the total look, which is essentially a visual reaction, taking into account all of the limitations that Judge Wu imposed? No, what we're seeking is protection for... I'm not talking about limited to the... I'm willing to say, you know, consider that it's beyond just what the copyright, you know, the tile that's in the copyright. That's what we're advocating. But at least what we've got in the courtroom today, there are more or less differences, more or fewer, greater or fewer, whatever it may be. Some are more pronounced than others. You're saying that that's what should go to a jury? Yes, as to whether or not the accused mosaics, the overall look, probably easier to understand than color expression, but the overall look is substantially similar. And we think that the test should be substantial similarity. I don't think any of the limiting... So what was it about counsel's presentation, which purported to go through on the extrinsic factors that you say is wrong? He pointed out differences, but whether or not the differences are sufficient to... has not been answered when considering the overall look as a feature that's protectable apart from the specific pattern. Okay. Thank you. Thank you. May we have the housekeeping matter now? Pardon? May we address the housekeeping matter? Which is? Both sides had said in the briefs that we would file a joint motion to lodge the physical... Yes, I noticed that. Is it okay for us to file that joint motion and lodge the samples for your honor's review? Yes. Why don't you leave those with the clerk and file the motion? It would be fine. Okay. Thank you. Thank you. The case of Century Tile versus First Glass, now submitted for decision, and Bailey versus Elias, we vacated and the submission is deferred. We're in adjournment for the week. Thank you. And by the way, often we get exhibits brought in. They're usually not very useful. Today it is very useful. Thank you, Your Honor. Thank you. All rise. This court is adjourned.
judges: Zouhary, Fletcher, Fisher